UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE ENRIQUEZ, individually and on behalf of
other persons similarly situated who were
employed by CHERRY HILL MARKET CORP.
and/or CHERRY HILL GOURMET, INC.
and/or DAVID ISAEV or any other entities
affiliated with or controlled by CHERRY HILL
MARKET CORP. and/or CHERRY HILL
GOURMET, INC. and DAVID ISAEV,

                            Plaintiffs,
      -against-

CHERRY HILL MARKET CORP. and CHERRY
HILL GOURMET, INC. and DAVID ISAEV
and/or any other entities affiliated with or
controlled by CHERRY HILL MARKET CORP.
and/or CHERRY HILL GOURMET, INC.
and/or DAVID ISAEV,

                        Defendants.
--------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-5616 (FB) (MDG)

*Appearances*
*For the Plaintiffs:*
LADONNA LUSHER, ESQ.
Virginia and Ambinder, LLP
111 Broadway, Suite 1403
New York, NY 10006

*For the Defendants:*
MICHAEL J. MAURO, ESQ.
Milman Labuda Law Group, PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

**BLOCK, Senior District Judge:**

        José Enriquez alleges that his former employer, Cherry Hill Market Corp.,

Cherry Hill Gourmet, Inc., and/or David Isaev (collectively, "Cherry Hill"), failed to pay

him in accordance with the minimum-wage, overtime and spread-of-hours provisions of

state law.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.1, 142-2.2, 142-2.4.  In addition

to pursing his own claims, he seeks to represent a class consisting of "all current and former

employees of Cherry Hill Market Corp. and/or Cherry Hill Gourmet, Inc., who performed supermarket-related jobs from December 3, 2004 until present." Pls.' Mem. of Law at 1. Accordingly, he moves to certify that proposed class pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the motion is denied.[1]

## I

"A district judge is to assess all of the relevant evidence admitted at the class certification stage[.]" *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). In so doing, the judge must resolve any relevant factual disputes, even on issues that overlap the merits of the underlying claim. *See id.* at 41. The following factual background is presented with those standards in mind.

## A. Named Plaintiff

Cherry Hill operates two gourmet grocery stores in Brooklyn. Enriquez worked at both stores between November 2008 and November 2010, primarily as a grocery stocker. He attests that he worked twelve-hour shifts at least six days a week— a total of 72 hours per week, that his starting pay was $280 a week, and that he was making $400 a week by the time he left Cherry Hill's employ. By contrast, payroll records produced by Cherry Hill reflect that, during the period from September 6, 2010, to November 14, 2010, Enriquez worked an average of 54 hours per week and was paid $450 per week.

---

[1]Enriquez further alleges that Cherry Hill violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. The Court previously conditionally certified the FLSA aspect of the case as a collective action. *See Enriquez v. Cherry Hill Market Corp.*, 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012).

**B.  Opt-In Plaintiffs**

Three other individuals opted in to the FLSA collective action.  Although their claims were later dismissed for failure to participate in discovery, *see Enriquez v. Cherry Hill Market Corp.*, 2012 WL 6626008 (E.D.N.Y. Dec. 20, 2012) (adopting report and recommendation), they nonetheless fall within the definition of the proposed class.  Of the three, one — Emilio Yax Lopez — has submitted a declaration in support of class certification.

Like Enriquez, Emilio Yax Lopez worked as a grocery stocker between November 2008 and November 2010.  He attests that he worked 72 hours per week, and that his pay ranged from $350 to $450 per week.

**C.  Other Employees**

During discovery, Cherry Hill disclosed a list of its employees for 2009-2010.  The list includes 121 names.  Payroll records are available for five of those employees for the period from September 6, 2010, to December 5, 2010, and reflect work weeks ranging from 61 to 72 hours per week, and weekly pay ranging from $450 to $666.  The employee list and payroll records generally corroborate Enriquez's claim that "no less than 70" of his co-workers worked similar shifts for similar pay.  Decl. of José Enriquez ¶¶ 7, 9; *see also id.* ¶ 10 ("My co-workers and I would regularly speak about how much money we made and that we were not paid overtime wages at time and one half for the hours we worked over 40.").

Former Cherry Hill employee Santiago Godinez (a/k/a Santiago Basurto) submitted a declaration in support of class certification.  He attests that, between November 2007 and October 2012, he worked at least 60 hours per week in the flower department for pay that ranged from $600 to $700.  The declaration of another employee, Solomon Romero,

3

attests that he was "always . . . paid properly for all hours I have works for Cherry Hill Market including any overtime hours." Decl. of Solomon Romero ¶ 12. In a separate declaration, however, Romero attests that a Cherry Hill manager pressured him to sign the earlier declaration. Other employees have made similar claims. Cherry Hill's management denies pressuring any employees to sign anything.

## II

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of [Federal Rule of Civil Procedure] 23(a) of numerosity, commonality, typicality, and adequacy." *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). "It may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23 demands a "rigorous analysis." *Public Offerings Sec. Litig.*, 471 F.3d at 33 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013) ("The Rule imposes stringent requirements for certification that in practice exclude most claims.").

It is helpful at the outset to recall the purpose behind Rule 23's "stringent requirements." The Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), provides a concise summary:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.  Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.  The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

Cherry Hill argues that Enriquez cannot meet the numerosity, commonalty and typicality requirements of Rule 23(a), or the predominance/superiority requirement of Rule 23(b)(3).  In the alternative, it argues that the class certification motion was not timely.

## A.  Rule 23(a)(1): Numerosity

It is undisputed that Cherry Hill had at least 121 employees in 2009-2010.  A class with more than 40 members presumptively satisfies the numerosity requirement.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Cherry Hill argues that it is not necessarily true that each of its 121 employees has wage-and-hour claims.  In support, it cites the low number of opt-ins to the FLSA collective action.  However, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. .Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  While the FLSA opt-in requirement is not onerous, it is still a barrier.  Accordingly, the Court declines to infer that the low number of opt-ins means that most employees have been satisfied with their wages.  Moreover, any individual employees who

truly are satisfied retain the right to opt out of the class.  *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (noting the distinction between Rule 23's opt-out procedure and the FLSA's opt-in procedure).

**B.  Rule 23(a)(2) and (3): Commonality/Typicality**

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class."  Rule 23(a)(3) requires a plaintiff to show that his or her claims "are typical of the claims . . . of the class."  The commonality and typicality requirements "tend to merge" into a single inquiry: "[W]hether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157 n.13).

The commonality/typicality test has traditionally been described as "easily satisfied" by a single common issue.  5 James Wm. Moore et al., *Moore's Federal Practice* § 23.23[2] (3d ed. 1997); *see also* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (4th ed. 2002) ("[T]here need only be a single issue common to all members of the class.  Therefore, this requirement is easily met in most cases." (footnotes omitted)).

That said, not just any issue will suffice.  "[A]ny competently crafted class complaint literally raises common questions."  *Dukes*, 131 S. Ct. at 2551 (citation and internal quotation marks omitted).  To obtain class certification, the plaintiff must demonstrate that "the class members 'have suffered the same injury.'"  *Id.* (quoting *Falcon*, 457 U.S. at 157). "This does not mean merely that they have all suffered a violation of the same provision of law."  *Id.*  Rather, the class claims "must depend upon a common contention . . . of such a

6

nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

> Enriquez offers the following as common issues of fact:
>
> (a)   Whether Defendants paid the members of the class the hourly rate of pay required by New York . . . Law?
>
> (b)   Whether Defendants paid members of the class for all hours worked?
>
> (c)   Whether Defendants paid members of the class overtime compensation for all hours worked over 40 each week?
>
> (d)   Whether Defendants paid members of the class spread of hours compensation for all days in which more than 10 hours were worked?
>
> (e)   Whether Defendants failed to maintain or generate accurate records of the hours worked by the proposed class members?

Pls.' Mem. of Law at 9.   The phrasing of those questions reflects a fundamental misunderstanding of the commonality/typicality requirement.   To warrant class certification, the *named plaintiff's* claim must have an issue in common with the claim of the other class members.   How Cherry Hill treated "members of the class" is simply not an issue on Enriquez's claim.   To see why, consider how his claim would unfold at trial.   The factfinder would, in essence, be asked to determine (a) how many hours *Enriquez* worked in a particular week, and (b) how much *he* was paid in that week.   The rest is algebra.[2]   More

---

[2]Enriquez's effective pay rate is $P/(40+1.5*(H\text{-}40))$, where $P$ is total pay for a particular week and $H$ is total hours worked.   Under the spread-of-hours regulation, the denominator would be increased by one for every workday longer than ten hours.   For any

importantly, the answers to those questions are unique to Enriquez, and would not, therefore, resolve the claims of any other class member—even if Enriquez is correct that Cherry Hill systemically underpaid all of its employees.

By way of contrast, consider *Cuevas v. Citizens Financial Group, Inc.*, 283 F.R.D. 95 (E.D.N.Y. 2012), a wage-and-hour case in which the plaintiff claimed that the defendant improperly classified its assistant bank managers as exempt employees. *See id.* at 96. The Court concluded that the classification presented a common question, notwithstanding a factual dispute as to variations in job duties. *See id.* at 98. The Second Circuit vacated on the ground that a determination as to class certification required resolving that dispute. *See Cuevas v. Citizens Fin. Group, Inc.*, 2013 WL 2321426, at *2 (2d Cir. May 29, 2013) (summary order). It noted, however, that misclassification of employees as exempt is appropriate for classwide resolution as long as there is adequate evidence that the class members' jobs "were similar in ways material to the establishment of exemption criteria." *Id.* at *3 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010).

The difference between Cuevas and Enriquez is this: As part of his individual claim, Cuevas would have to prove that he was improperly classified as exempt. If the Court were to find that all assistant bank managers performed materially similar duties, resolution of that individual claim would have obviated the need to relitigate the issue for each assistant bank manager. All class members would have benefitted from the

---

weeks in which his effective pay rate was below the applicable minimum wage ($7.15/hour until July 24, 2009, and $7.25/hour thereafter), Cherry Hill violated the New York Labor Law.

adjudication had he succeeded, and would have been bound by it had he failed. Adjudication of Enriquez's claim, on the other hand, would not establish the pay or hours of any other employee. It would not, in Justice Scalia's words, resolve any part of each class member's claim "in one stroke." *Dukes*, 131 S. Ct. at 2551.

Enriquez argues that there are also common issues of law:

(a)     Whether Defendants complied with New York Labor Law pertaining to minimum wages for every hour Plaintiffs worked?

(b)     Whether Defendants complied with New York Labor Law pertaining to overtime compensation for hours Plaintiffs worked beyond 40 each week?

(c)     Whether Defendants complied with New York Labor Law pertaining to spread of hours compensation for hours Plaintiffs worked beyond 10 each day?

(d)     Whether the individual Defendant [i.e., Isaev] is personally liable for failure to pay all owed wages?

Pls.' Mem. of Law at 9. The first three questions are entirely dependent on the factual questions and are, accordingly, just as individualized. In other words, whether Cherry Hill complied with the New York Labor Law depends entirely on each employee's total pay and total hours worked for a given week. Since adjudication of Enriquez's claim would not answer those factual questions for any other employee, it would also not answer the legal question of whether Cherry Hill violated the New York Labor Law for any other employee.

The final legal question presents a closer case. Unlike hours and pay, the basis for holding Isaev individually liable is not unique to plaintiff. Rather, it depends on the relationship between Isaev and the corporation entities. *See Morris v. New York State Dep't*

*of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) ("[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.").  The relevant factual inquiry will not vary from plaintiff to plaintiff.

Under *Dukes*, the common issue must be "central" to the class members' claims.  131 S. Ct. at 2551.  In her dissenting opinion, Justice Ginsburg objected that the majority "imports into the Rule 23(a) determination concerns properly addressed in a Rule 23(b)(3) assessment."  *Id.* at 2562 (Ginsburg, J., dissenting).  In this case, the dispute between the majority and the dissent is little more than semantics.  Whether termed a question of "centrality" under Rule 23(a), or of "predominance" under Rule 23(b)(3), the Court must weigh common issues against individualized ones.  Solely as a matter of convenience, the Court will assume that the issue of Isaev's personal liability satisfies the commonality/typicality  requirements of Rule 23(a), and will consider the significance of that issue under the rubric of the predominance and superiority requirements of Rule 23(b)(3).

## C.  Rule 23(b)(3):  Predominance/Superiority

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods.*, 521 U.S. at 615 (quoting the rule).  Those requirements seek

10

to identify cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (citation, internal quotation marks and alteration omitted).

As noted, the only possible common issue in this case is whether Isaev should be individually liable for any wage underpayments. That issue is entirely ancillary to the merits, which, as also noted, depend on a determination of each employee's total pay and hours worked. The Court easily concludes that those individualized questions predominate over the largely incidental question of Isaev's personal liability.

As a result, the class-action mechanism is not a superior means of adjudicating this case. Again, recall how the case would unfold at trial and assume that Enriquez establishes that he was underpaid by $5,000. What happens next? He concedes that the Court would not simply award each class member $5,000. Rather, each class member would have to come forward and establish how many hours he or she worked and how much he or she was paid. Cherry Hill would be entitled to contest each class member's claims.

That would be more than an individualized inquiry into the amount of damages for a common injury; it would be a mini-trial on each class member's claims. The case would, in other words, unfold precisely as it would without class certification. The class-action mechanism would, therefore, achieve no "economies of time, effort, and expense." *Amchem*, 521 U.S. at 615.

**III**

The Court concludes that Enriquez has failed to establish the predominance and superiority requirements of Rule 23(b)(3).[3]   Accordingly, the motion for class certification is denied.

**SO ORDERED.**

_/s/ Frederic Block_
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 30, 2013

---

[3]Because of this conclusion, the Court need not reach Cherry Hill's alternative argument that the motion for class certification was not timely.

12